IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:19-CV-00666-DSC

| | |
|---|---|
| LIBERTY MUTUAL FIRE INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>DAVID LINDSEY, DAPHNE LINDSEY, KRISTI LINDSEY through General Guardians DAVID LINDSEY and DAPHNE LINDSEY, and HANNAH SUTTON through HEATHER SUTTON, Guardian,<br><br>Defendants. | **ORDER** |

**THIS MATTER** is before the Court on "Liberty Mutual Fire Insurance Company's Motion for Judgment on the Pleadings" (Doc. 22) and "Defendant Sutton's Motion for Summary Judgment" (Doc. 24), as well as the parties' associated briefs, affidavits, and exhibits. See Docs. 1, 1-1, 1-2, 1-3, 18, 19, 23, 23-1, 25, 26, 27, 28, and 29.

The parties have consented to Magistrate Judge jurisdiction under 28 U.S.C. § 636(c) and this Motion is ripe for the Court's determination.

Having carefully considered the parties' arguments, the record, and the applicable authorities, the Court grants Plaintiff's Motion for Judgment on the Pleadings and denies Defendant Sutton's Motion for Summary Judgment as discussed below.

**I.     FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff Liberty Mutual Fire Insurance Company ("LMFIC") issued a homeowner's insurance policy, No. H32-258-172491-70, (the "Policy") to Defendants David and Daphne

1

Lindsey with effective dates of August 27, 2017 to August 27, 2018. Doc. 1 at 1–2; Doc. 1-1. On March 17, 2018, Kristi Lindsey, the minor daughter of David and Daphne Lindsey, was operating a golf cart on Polk Mountain Road, a public road in Union County, North Carolina. Doc. 1 at 3. She lost control of the golf cart and crashed. Id. Defendant Heather Sutton was a passenger in the golf cart and suffered injuries. Id. The golf cart was owned by Frank and Loretta Lindsey, the parents of Defendant David Lindsey. Id.

On July 16, 2019, Defendant Sutton filed a personal injury action ("Underlying Action") in Union County against David, Daphne, and Kristi Lindsey (the "Lindsey Defendants"). Doc. 1 at 4; Doc. 1-2. Defendant Hannah Sutton claimed that this incident was covered under the Policy. Id. at 4.

On August 29, 2019, LMFIC denied coverage for the Lindsey Defendants, but agreed to provide a defense subject to a full and complete reservation of rights. Doc. 1 at 4; Doc. 1-3 at 5. LMFIC denied coverage because (1) the accident fell within a Policy exclusion barring coverage for unregistered motor vehicles when registration is required by law and (2) the golf cart did not fall within the exception to the motor vehicle exclusion for golf carts owned by an insured and operated at the time of the "occurrence" within the legal boundaries of a golf course or private residential community. Doc. 1-3 at 4–5.

On December 6, 2019, LMFIC filed its Complaint for Declaratory Judgment pursuant to 28 U.S.C. § 2201(a) to determine the rights and obligations of the parties under the Policy. Doc. 1. On January 16, 2020, Defendant Heather Sutton filed a Motion to Dismiss pursuant to Rule 12(b)(6). Doc. 10. On January 24, 2020, the Lindsey Defendants filed a Motion to Dismiss pursuant to Rule 12(b)(6). Doc. 12. Since Defendant Sutton and the Lindsey Defendants

presented nearly identical arguments, the Court addressed both Motions to Dismiss together. Both Motions were denied. Doc. 17.

On December 11, 2020, LMFIC filed a Motion for Judgment on the Pleadings pursuant to Rule 12(c). Doc. 22. On January 6, 2021, Defendant Sutton filed a response as well as a Motion for Summary Judgment. Docs. 24, 25. This Order addresses both Motions.

LMFIC seeks a declaration that it has no duty to defend or indemnify the Lindsey Defendants in connection with the Sutton Underlying Action, and that it has no duty to indemnify her for any of the damages she suffered. Defendant Sutton seeks summary judgment as to coverage in this matter.

## II. DISCUSSION

### A. Standard of Review – Rule 12(c)

Rule 12(c) of the Federal Rules of Civil Procedure permits a party to move for judgment on the pleadings after the pleadings are closed. The legal standard applied to a Rule 12(c) motion is the same as a Rule 12(b)(6) motion for failure to state a claim. See Demetry v. Lasko Prods., Inc., 284 F. App'x 14, 15 (4th Cir. 2008). "A Rule 12(c) motion is designed to dispose of a case when the material facts are not in dispute and the court can judge the case on the merits by considering the pleadings and any attachments to the pleadings and materials referenced, which are incorporated into the pleadings by Rule 10(c)." Hartford Cas. Ins. Co. v. Greve, No. 3:17CV183-GCM, 2017 WL 5557669, at *2 (W.D.N.C. Nov. 17, 2017), aff'd, 742 F. App'x 738 (4th Cir. 2018) (quotation marks omitted).

The applicable test is whether, "when viewed in the light most favorable to the party against whom the motion is made, genuine issues of material fact remain or whether the case can be decided as a matter of law." Id. A Rule 12(c) motion "has been appropriately used for

3

resolving declaratory judgment actions involving the construction of insurance policy language or provisions." Unitrin Auto & Home Ins. Co. v. Siarris, 2015 WL 457630, at *2 (W.D.N.C. Feb. 3, 2015). "While the Court generally considers only the allegations of the pleadings in ruling on a Rule 12(c) motion, the Court may consider documents that are 'integral to and explicitly relied on in the complaint,' so long as there is no question as to the documents' authenticity." In re Versant Props., LLC, No. 1:10CV198, 2011 WL 1131057, at *3 n.4 (W.D.N.C. Mar. 25, 2011); see also Massey v. Ojaniit, No. 3:11-CV-477-RJC, 2013 WL 1320404, at *7 (W.D.N.C. Mar. 29, 2013) ("The court may consider the complaint, answer, and any materials attached to those pleadings or motions for judgment on the pleadings 'so long as they are integral to the complaint and authentic.'" (citations omitted)). "[T]he court need not accept allegations that 'contradict matters properly subject to judicial notice or exhibit.'" Massey, 2013 WL 1320404, at *7.

### B. Insurance Coverage

When a district court's jurisdiction is based on diversity, the court must apply the forum state's choice of law rules. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496–97 (1941). North Carolina is the forum state. Therefore, North Carolina's choice of law rules apply.

For insurance contracts, North Carolina courts apply the principle of *lex loci contractus*, which requires that "the substantive law of the state where the last act to make a binding contract occurred, usually delivery of the policy, controls the interpretation of the contract." See Beal v. Coastal Carriers, Inc., 794 S.E.2d 882, 893 (N.C. Ct. App. 2016). Under North Carolina law, "[a]n insurer's duty to defend is ordinarily measured by the facts as alleged in the pleadings," and insurers are required to defend policyholders from even "unsubstantiated" allegations if they allege an injury covered by the policy. Harleysville Mut. Ins. Co. v. Buzz Off

Insect Shield, LLC, 692 S.E.2d 605, 611 (2010) (quoting Waste Mgmt. of Carolinas, Inc. v. Peerless Ins. Co., 340 S.E.2d 374, 377 (1986)). "[H]owever, even a meritorious allegation cannot obligate an insurer to defend if the alleged injury is not within, or is excluded from, the coverage provided by the insurance policy." Id.

If the parties dispute whether a duty to defend exists, the insured must first show that the facts asserted fall within the policy's coverage, after which "the insurer must show that the policy precludes coverage based on an exclusion." Penn. Nat'l Mut. Cas. Ins. Co. v. Sharpe Images, Inc., No. 3:11-CV-150, 2012 WL 3962747, at *2 (W.D.N.C. Sept. 11, 2012). When there is no duty to defend, there is no duty to indemnify. Greve, 2017 WL 5557669, at *5. North Carolina courts apply the definitions supplied in insurance contracts, and undefined words are given "a meaning consistent with the sense in which they are used in ordinary speech, unless the context clearly requires otherwise." Harleysville, 692 S.E.2d at 612 (quoting Wachovia Bank & Tr. Co. v. Westchester Fire Ins. Co., 172 S.E.2d 518, 522 (1970)). The meaning of an insurance contract is a question of law for the court. See Wachovia, 172 S.E.2d at 522.

As an initial matter, the golf cart involved in this incident falls within the Policy's definition of a "motor vehicle," which is defined as a "self-propelled land or amphibious vehicle." Doc. 1-1 at 8–9. LMFIC contends that all of the claims in the Underlying Action fall squarely within Exclusion A.1 or A.2 of the "Motor Vehicle Liability" exclusions of the Policy.

### a. Coverage Under A.1. of the "Motor Vehicle Liability" Exclusion

LMFIC contends that because the incident occurred on a public highway and the golf cart was not registered, it falls squarely within Exclusion A.1.b of the Policy.

The Policy excludes coverage for personal liability claims arising out of "Motor Vehicle Liability." The pertinent provision in the "Motor Vehicle Liability" exclusion in A.1.b. provides as follows:

Section II – Exclusions

A. "Motor Vehicle Liability"

1. Coverages E and F do not apply to any "motor vehicle liability" if, at the time and place of an "occurrence", the involved "motor vehicle":

b. Is not registered for use on public roads or property, but such registration is required by a law, or regulation issued by a government agency, for it to be used at the place of the "occurrence.

Doc. 1-1 at 25. Both the Lindsey Defendants and Sutton have admitted that the golf cart was not registered with the North Carolina Department of Motor Vehicles at the time of the accident. Doc. 18 at 2; Doc. 19 at 2.

N.C. Gen. Stat. § 20-50(a) provides that a "vehicle <u>intended</u> to be operated upon any highway of this State must be registered with the Division [of Motor Vehicles] in accordance with G.S. 20- 52, and the owner of the vehicle must comply with G.S. 20-52 before operating the vehicle." (emphasis added). Under the statute, the issue presented here is whether a golf cart is <u>intended</u> to be operated on a highway.

In support of its argument that a golf cart operated on a public highway must be registered, LMFIC cites an October 14, 1982 Opinion of the North Carolina Attorney General and N.C. Admin. Code 03C .0419. The Attorney General's Opinion states that "when a self-propelled golf cart is operated on the streets and highways of this State, it is a motor vehicle" that must be registered under North Carolina law. Doc. 23-1. Similarly, N.C. Admin. Code 03C .0419, found in the Division of Motor Vehicles chapter under Title 19A – Transportation, provides: "A golf cart is not classified as a motorcycle[.] It must be licensed, when used on the

highway, as a regular passenger-carrying vehicle. The fee for registration is the same as that for an automobile."

The Court acknowledges the limited precedential value of the Attorney General's Opinion and N.C. Admin. Code 03C .0419. But applying the plain meaning of the language contained in § 20-50(a), the Court cannot conclude that a golf cart is <u>intended</u> to be operated on a public highway. The dispositive factor is the functionality of the vehicle and not the parties' intent. Exclusion A.1.b. of the "Motor Vehicle Liability" exclusion does not preclude coverage under the Policy.

### b. Coverage Under A.2. of the "Motor Vehicle Liability" Exclusion

LMFIC contends that even if coverage is not excluded by A.1.b., coverage would be excluded under Exclusion A.2.e. Defendant Sutton likewise argues that because the golf cart was not owned by Defendants David and Daphne Lindsey and was designed for recreational use off public roads, it falls within Exclusion A.2.d.(1).

The Policy provides:

2. If Exclusion A.1. does not apply, there is still no coverage for "motor vehicle liability", unless the "motor vehicle" is:

d. Designed for recreational use off public roads and:

    (1) Not owned by an "insured";

e. A motorized golf cart that is owned by an "insured", designed to carry up to four persons, not built or modified after manufacture to exceed a speed of 25 miles per hour on level ground and, at the time of an "occurrence", is within the legal boundaries of:

    (1) A golfing facility and is parked or stored there, or being used by an "insured" to:
        (a) Play the game of golf or for other recreational or leisure activity allowed by the facility;
        (b) Travel to or from an area where "motor vehicles" or golf carts are parked or stored; or

>       (c) Cross public roads at designated points to access other parts of the
>           golfing facility; or
> (2) A private residential community, including its public roads upon which
> a motorized golf cart can legally travel, which is subject to the authority of
> a property owners association and contains an "insured's" residence.

Doc. 1-1 at 25.

North Carolina follows the well-settled principle in contract law of applying specific provisions over more general ones dealing with the same subject matter. See <u>Lail v. Cleveland Cty. Bd. of Educ.</u>, 645 S.E.2d 180, 187 (N.C. Ct. App. 2007) ("Our canons of contract construction hold that 'when general terms and specific statements are included in the same contract and there is a conflict, the general terms should give way to the specifics.'") (quoting <u>Wood-Hopkins Contracting Co. v. North Carolina State Ports Auth.</u>, 202 S.E.2d 473, 476 (1974)). Even construing the exclusion in A.2.d(1) "strictly to provide coverage," coverage does not exist. <u>Lail</u>, 645 S.E.2d at 186.

The exclusion in A.2.e applies to the incident at issue. This exclusion specifically covers motorized golf carts. The Policy includes separate exclusions for recreational vehicles. These vehicles are treated differently under the Policy. Had the insurer intended for a golf cart to be treated as a recreational vehicle, the drafters of the policy would not have included a separate exclusion for golf carts. But they did. The specific A.2.e exclusion controls over the conflicting general A.2.d(1) exclusion. See <u>S. Ry. Co. v. Coca Cola Bottling Co.</u>, 145 F.2d 304, 307 (4th Cir. 1944) (stating that "a presumption arises that the specific [] provision, rather than the general, is controlling").

Moreover, coverage does not exist under A.2.e. of the "Motor Vehicle Liability" exclusion. The golf cart was owned by Frank and Loretta Lindsey who are not "insureds" under the Policy. The Lindseys maintained separate coverage for the golf cart that is not at issue here.

The golf cart was not being used at, or in any connection with, any golfing facility to fall under Exclusion A.2.e(1). The site of the incident was not within a private residential community upon which motorized golf carts can legally travel to fall under Exclusion A.2.e(2). Thus, the golf cart does not fall within the coverage of the Policy under Exclusion A.2.e. Exclusion A.2.e precludes coverage.

Accordingly, LMFIC has no duty to defend or indemnify the Lindsey Defendants in connection with the Underlying Action and has no duty to indemnify Defendant Sutton for any damages she suffered. LMFIC's Motion for Judgment on the Pleadings is granted.

### C. Standard of Review – Rule 56

Federal Rule of Civil Procedure 56(a) provides:

> A party may move for summary judgment, identifying each claim or defense-or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

Fed. R. Civ. P. 56(a). "A dispute is genuine if a reasonable jury could return a verdict for the non-moving party." Vannoy v. Federal Reserve Bank of Richmond, 827 F.3d 296, 300 (4th Cir. 2016) (quoting Libertarian Party of Va. v. Judd, 718 F.3d 308, 313 (4th Cir. 2013)). "A fact is material if it might affect the outcome of the suit under the governing law." Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The court must view the evidence and any inferences therefrom in the light most favorable to the non-moving party. Tolan v. Cotton, 572 U.S. 650, 657 (2014); see also

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The court applies "the fundamental principle that at the summary judgment stage, reasonable inferences should be drawn in favor of the non-moving party." Jacobs v. N.C. Admin. Office of the Courts, 780 F.3d 562, 570 (4th Cir. 2015) (quoting Tolan, 572 U.S. at 660). "Summary judgment cannot be granted merely because the court believes that the movant will prevail if the action is tried on the merits." Id. at 568-69 (quoting 10A Charles Alan Wright & Arthur R. Miller et al., Federal Practice & Procedure § 2728 (3d ed.1998)). "The court therefore cannot weigh the evidence or make credibility determinations." Id. at 569 (citing Mercantile Peninsula Bank v. French (In re French), 499 F.3d 345, 352 (4th Cir. 2007)). In the end, the question posed by a summary judgment motion is whether the evidence "is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 252.

For the reasons discussed above, the Court concludes that taking the evidence in the light most favorable to LMFIC and the Lindsey Defendants, Defendant Sutton's Motion for Summary Judgment is denied.

### III. ORDER

**NOW THEREFORE IT IS ORDERED that:**

1. "Liberty Mutual Fire Insurance Company's Motion for Judgment on the Pleadings" (Doc. 22) is **GRANTED**.

2. "Defendant Sutton's Motion for Summary Judgment" (Doc. 24) is **DENIED**.

3. The Clerk is directed to send copies of this Order to counsel for the parties.

**SO ORDERED ADJUDGED AND DECREED.**

Signed: February 11, 2021

David S. Cayer
United States Magistrate Judge